# Guilmartin *v.* Wood.
# Guilmartin *v.* Clark.

*Statutory Actions in nature of Ejectment.*

1. *Parol evidence ; admissibility in aid of writing.*—In the construction of written instruments, the general rule excludes any direct evidence of the intention of the parties, except such as is furnished by the writing itself, when considered in the light of the surrounding facts and circumstances ; and while parol evidence is admissible to explain an ambiguity which is not apparent on the face of the writing, or to point out and connect the writing with the subject-matter, and to identify the object proposed to be described, such oral evidence must not be inconsistent with the writing itself.

2. *Same ; description of premises in conveyance.*—In the construction of a conveyance, an ambiguity in the description of the premises may be explained by parol evidence ; and where the description is by metes and bounds, evidence of the situation and locality of the premises, and of their identity, according to the description in the conveyance, is admissible ; but parol evidence can not be received to show a mistake in the description of the premises, or to alter or vary the boundary as specified, or to establish another and different boundary for that expressed in the deed.

3. *Same ; same.*—When the premises conveyed are described as being situated *on* a specified street or road, parol evidence would be admissible to show on which side of the street or road they lie ; but, when they are described as bounded on the *east* by the street, parol evidence can not be received, at law, to show that the street is in fact the *western* boundary ; unless it shows a change in the location of the street since the execution of the deed, whereby the street has become the western instead of the eastern boundary.

4. *Description of premises in conveyance.*—Where the premises conveyed are described by definite metes and bounds, from which the boundaries can be readily ascertained, such description must prevail over any general words of description also added.

5. *Presumption in favor of judgment.*—To justify a reversal, the record

[Guilmartin v. Wood.]

must affirmatively show error, else the presumption of correctness will be indulged in favor of the judgment.

6. *When defendant may show outstanding title.*—In ejectment, or the statutory action in nature of ejectment, if the defendant entered under the plaintiff, or if he is a mere trespasser on the plaintiff's prior possession, he can not defeat a recovery by showing an outstanding title in a third person; but, in all other cases, his possession will defeat a recovery by any other person than the true owner, and he may show the outstanding title of the true owner.

APPEALS from the Circuit Court of Pike.

Tried before the Hon. JNO. P. HUBBARD.

These two cases, involving substantially the same facts, were argued and submitted together; each being a statutory action in the nature of ejectment, commenced on the 15th December, 1882, by Mrs. Minnie Guilmartin, a married woman. The defendant in one case was John H. Wood, and in the other James A. Clark and wife, tenants in possession. In the first case, the premises sued for were described in the complaint as a lot in the city of Troy, "situated on the west side of North Three-notch street, bounded on the north by Orion street, on the west by lot of J. C. Jolly, south by lot where Wallace Nall now resides, and east by said North Three-notch street;" and in the other, as a lot in said city, " bounded on the north by lot upon which Wallace Nall now resides, on west by lot of J. C. Jolly, on south by lot of Lowndes Hendricks, and on east by North Three-notch street." The plaintiff claimed the property as the sole heir at law of her deceased father, Beasant Holly, who died on the 12th January, 1863 ; and the defendants were in possession, in each case, claiming under the heirs of H. S. Urquhart, who were made parties defendant.

In the case against *Wood*, as the bill of exceptions states, " the evidence on the part of the plaintiff showed that she was the only heir of Beasant Holly, deceased, who died in the year 1863 ; that said Holly resided on said lot, from the year 1860, or 1861, up to the time of his death, claiming it as his own, having built a dwelling-house on it, and exercised other acts of ownership during said time; that said lot is on the *west* side of Three-notch street, and south of Orion street, and in the corner made by the intersection of the two streets ; and that the rent is worth $125 per year. Plaintiff having rested, defendants introduced, in connection with the deed from plaintiff and her husband to H. S. Urquhart, evidence tending to show that the lot sued for was known as the *Beasant Holly lot;* to which evidence plaintiff excepted, after objection was made by plaintiff. The defense then introduced, against the objection of plaintiff, the said deed from plaintiff and her husband to said Urquhart;" which was in form a quit-claim, was without date, and purported to be attested by R. C. King and W. E.

[Guilmartin v. Wood.]

Hanchey as witnesses, the date "Octo. 24th, 1882," being written above their names. The premises thereby conveyed were thus described: "The following real estate, situated in the city of Troy, in said State and county, to-wit: on street leading in the direction of Union Springs, known as the *Beasant Holly lot,* bounded on the north and west by a vacant lot of Ira Hobdy, on the *west* by street leading to Union Springs, on south by lot of said H. S. Urquhart." The plaintiff's objections to the admission of this deed as evidence, as specified in the bill of exceptions, were: "1st, because said deed was without consideration, and was not made upon a sale of said property, she being a married woman at the time of its execution; and, 2d, because said deed does not convey the property sued for." In support of her first objection, the plaintiff proved by said Hanchey, one of the subscribing witnesses, the circumstances attending the execution of the deed, which it is unnecessary to state; and in support of her second objection, she adduced evidence showing that the description of the premises sued for, as given in the complaint, was an accurate description of them at the time of the execution of the deed; while the defendant introduced evidence, which was admitted against the objection of the plaintiff, "that the lot sued for was known as the *Beasant Holly lot,* and that there was no other lot known to the witnesses by that name.' The court overruled the objections, and admitted the deed; and the plaintiff excepted.

The plaintiff further insisted, against the validity of this deed, that she was not twenty-one years of age when it was executed; and the evidence introduced by each party, as to the exact day on which the deed was executed, was contradictory.

The defendant offered in evidence a patent from the United States to one John Caskrey, for the forty acres of land which embraced the premises sued for, dated March 15th, 1837, and *mesne* conveyances, from said Caskrey to W. J. McBryde, and from said McBryde to Ira Hobdy; the latter conveyance being dated February 23d, 1856. These several conveyances were admitted in evidence by the court, against the plaintiff's objections, and she duly reserved exceptions to their admission. "Evidence was introduced, in connection with said deed, tending to prove that said Hobdy went into possession under it, and was in possession when said Holly went into possession. The defendant introduced in evidence, also, a deed from plaintiff's mother, the widow of said B. Holly, to Robert Baugh, executed in 1864 (or 1865), conveying her interest in said lot; and a deed from said Baugh to H. S. Urquhart, dated January 19th, 1867, in which the premises conveyed were thus described: 'A certain improved lot in the town of Troy, containing two acres, more or less, lying west of the street leading in the direction

[Guilmartin v. Wood.]

of Union Springs, known as the *Beasant Holly lot*, bounded north and west by a vacant lot of Ira Hobdy, on the west by street leading to Union Springs, on the south by a lot of said H. S. Urquhart.' The defendant introduced evidence, also, that said Urquhart went into possession of said lot, under said deed, in 1867, and held and improved it, claiming it as his own, by himself and his tenants, ever since. Evidence was introduced, also, tending to show that Orion street had been established after the deed from said Baugh [was executed], and that said original lot, known as the *Beasant Holly lot*, had been subdivided after the execution of said Baugh's deed to Urquhart, but before the execution of plaintiff's deed to said Urquhart; and that when said Urquhart received the deed from plaintiff, he was in possession, and had been holding adversely to plaintiff."

On this evidence, the plaintiff asked the court to charge the jury—1st, " that the plaintiff's right to recover in this case can not be defeated by any outstanding title in Hobdy or any one else ;" 2d, " that the jury will find for the plaintiff, unless they find from the evidence that she was twenty-one years of age when her deed to Urquhart was signed and delivered ;" 3d, " that if the evidence is equally balanced, as to whether said deed to Urquhart was delivered before or after plaintiff attained her majority, then the jury will find for the plaintiff on that point." The court refused each of these charges, and the plaintiff duly excepted to their refusal ; and she also excepted to several charges given by the court at the instance of the defendant, among which were the following:  " 9. If the defendants' ancestor was in possession, under color of title, holding in good faith, he was not a mere trespasser."  " 11. If the jury believe, from the evidence, that Urquhart went into possession of said lands under a deed from a party who was at the time in possession under color of title, then Urquhart was not a trespasser."

In the case against *Clark and wife*, as the bill of exceptions shows, " the plaintiff's testimony tended to show that the title to the property sued for was in her, and that it was a part of her statutory separate estate ; that said property was a part of a lot in the city of Troy, which was bounded on the north by Orion street, on the east by Three-notch street, on the south by a lot formerly owned by H. S. Urquhart, deceased, and west by a residence lot of J. C. Jolly. The defendants offered in evidence a deed signed by plaintiff and her husband, to H. S. Urquhart, defendants' vendor, as follows," setting out the same deed above referred to.  " Parol evidence was admitted, tending to identify the lot in said deed with the one sued for; to which plaintiff reserved exceptions. Plaintiff objected to the

[Guilmartin v. Wood.]

introduction of said deed as evidence; which objection the court overruled, and the plaintiff excepted." After stating the other evidence in the case, substantially as in the former case, the bill of exceptions further states, that the evidence showed that plaintiff and her mother removed from the lot in 1861, or 1862, soon after said Holly went into the army, and that neither of them was ever afterwards in actual possession; and it then adds: "Urquhart and his tenants sought to defeat plaintiff's recovery, by showing that there was an outstanding title in the heirs of said Hobdy, who was dead, and offered evidence as to that. Plaintiff's contention was, that Hobdy's title was barred by Urquhart's adverse holding, and therefore could not be used to defeat her; and she contended that she could avoid and defeat her deed in a court of law, because the property was her statutory estate, the consideration was only nominal, and was in fact never intended to be paid. There was no pretense that any fraud had been actually practiced on her by any one procuring the deed, or that it was given in payment of the husband's debt, or to secure his debt. There was evidence, also, as to the boundaries of the Holly lot; it being insisted that no part of the lot sued for was a part of the Holly lot, but that the lot sued for was an adjoining lot, plaintiff claiming only about twenty-six (26) feet as a part of said original Holly lot. The court thereupon charged the jury, that the deed of plaintiff and her husband estopped her from recovering the property sued for, if she was over the age of twenty-one years at the time she signed said deed, unless the grantee or his agent practiced a fraud upon her, by which she was induced to sign the same." To this charge the plaintiff excepted, as also to the refusal of several charges asked by her, which it is unnecessary to state.

In each case, the several rulings of the court on the evidence, the charges given, and the refusal of the charges asked, were assigned as error.

GARDNER & WILEY, for appellant, cited *Simms v. Kelly*, 70 Ala. 429; 1 Greenl. Ev. § 301, note 4; *Hartt v. Rector*, 13 Mo. 497 (53 Amer. Dec. 157); *Hughes v. Wilkinson*, 35 Ala. 453; *Gantt v. Cowan*, 27 Ala. 582; Adams on Ejectment, 32, notes; 4 Greenl. Cruise, tit. 32, ch. 21, sec. 31; *Jackson v. Hudson*, 3 John. 375; 4 Dana, 562; *Whitesides v. Jackson*, 1 Wendell.

N. W. GRIFFIN, *contra*, cited *Chambers v. Ringstaff*, 69 Ala. 140; *Williams v. Higgins*, 69 Ala. 517; *King v. Stevens*, 18 Ala. 475; *Wilson v. Glenn*, 68 Ala. 383; 4 Ala. 300.

[Guilmartin v. Wood.]

CLOPTON, J.—In the construction of written instruments, the general rule excludes any direct evidence of the intention of the parties, except such as is furnished by the writing itself, when considered in the light of the surrounding facts and circumstances. Parol evidence is admissible, to explain an ambiguity that does not appear on the face of the writing, but arises from some extrinsic, collateral matter—to point out, and connect the writing with the subject-matter, and to identify the object proposed to be described. "Such evidence is received, not for the purpose of importing into the writing an intention not expressed therein, but simply with the view of elucidating the meaning of the words employed; and in its admission, the line which separates evidence which aids the *interpretation* of what is in the instrument, from direct evidence of intention independent of the instrument, must be kept steadily in view; the duty of the court being, to declare the meaning of what is written in the instrument, not of what was intended to be written."—*Hughes v. Wilkinson*, 35 Ala. 453. The oral evidence must not be inconsistent with the writing.

In construing a deed, an ambiguity in the description of the premises conveyed may be explained by parol evidence; and where the description is by metes and bounds, evidence of the situation and locality of the premises, and of their identity, according to the description in the conveyance, is admissible. But such evidence is not admissible to show a mistake in the description, or to alter or vary the boundary, or to substitute another and different boundary for the one expressed in the conveyance.

The defendants, for the purpose of showing that the plaintiff had conveyed the land sued for to Urquhart, offered a deed executed by her and her husband. In the deed, the premises conveyed are described as situate "on street leading in the direction of Union Springs, known as the *Beasant Holly lot*," bounded on the north, west and south by the lands of co-terminous proprietors, and "on the *west* by street leading in the direction of Union Springs." The premises sued for are situate on the west side of North Three-notch street, and bounded on the *east* by said street. It is conceded, that the "street leading in the direction of Union Springs" is the North Three-notch street. From these descriptions, the premises sued for are on the *west*, and the premises conveyed by the deed are on the *east* side of Three-notch street.

It may be conceded, that this part of the description is a mistake of the draughtsman of the deed. If so, a court of law is without power to reform it; and without having been reformed by a court having jurisdiction, it is inoperative to pass

14

the legal title to land situate on the *west* side of the street. *Humes v. Bernstein*, 72 Ala. 546, 555. The deed having been offered as a muniment of title, the admission of evidence *aliunde*, to show such mistake, is to ascertain and declare what was *intended* to be written, and not the *meaning* of what is written, in the conveyance.

If the description had stopped with the general words, "situate in the city of Troy, and said State and county, to-wit, on street leading in the direction of Union Springs, known as the *Beasant Holly lot*," without giving a specific description of the boundaries, parol evidence may have been admissible to show the definite location of the "*Beasant Holly lot*," and to identify it with the land in controversy.—*Baucum v. George*, 55 Ala. 259. But general words can not overide a particular description. It is a principle long and well settled, that where a conveyance describes the premises by clear and definite metes and bounds, from which the boundaries can be readily ascertained, such description shall prevail, and determine the boundaries and location, over general words of description.—*McCoy v. Gallaway*, 3 Ohio, 283; *Spiller v. Scribner*, 36 Vt. 247; *Frost v. Spaulding*, 19 Pick. 445; 3 Wash. on Real Prop. 424. The presumption is, the grantor intended to convey the land thus particularly and clearly designated. This presumption may be rebutted in a court of equity, but is conclusive in a court of law. Any general words of description, and courses and distances, although expressed, yield to a description by marked trees, by water-courses, mountains, or other natural objects, or by a street permanently located and well defined. *McIver v. Walker*, 9 Cr. 173; *Clements v. Pearce*, 63 Ala. 284.

In the case against Wood, the rulings on the admissibility of the deed, and the parol evidence in connection with it, and the charges in respect thereto, are in conflict with these rules.

In the case against Clark, however, the bill of exceptions recites, that "parol evidence was admitted, tending to identify the lot in said deed with the one sued for." The evidence thus admitted is not set out. The party alleging error, must show it affirmatively. It is not sufficient to authorize a reversal, that this court can not ascertain from the record that the primary court acted correctly. The error must clearly appear, or the presumption of correctness will support the judgment. If any parol evidence is admissible for the purpose of identifying the land conveyed with the land sued for, we can not reverse. Evidence, *not inconsistent with what is written in the deed, is admissible for this purpose*—such as, of a change, since the execution of the deed, of the location of the street from the west to the east side of the lot.

But the court instructed the jury, that the deed of plaintiff

[Guilmartin v. Wood.]

to Urquhart estopped her from recovering the property, if she was over twenty-one years of age at the time she signed it, and was not induced to sign it by the fraud of the grantee or his agent. This charge is based upon the assumption and ascertainment, *by the court*, that the deed, without the aid of any evidence *aliunde*, identified the premises conveyed with the premises in controversy. This instruction is inconsistent with the views we have expressed. As we have above said, the deed, upon its face, did not pass the legal title to the land mentioned in the complaint.

If a defendant enters into possession under the plaintiff, or by his permission, or is an intruder upon the possession of the plaintiff, having no claim or color of title, he is estopped from setting up, in an action of ejectment, an outstanding title. In all other cases, he may destroy the plaintiff's right to recover, by showing an outstanding title, with which he in no way connects himself; his possession being good against all others, except the true owner.— *Wilson v. Glenn*, 68 Ala. 383 ; Tyler on Ejectment and Ad. Poss. 564.

It appears that Ira Hobdy, who derived title from the patentee by successive intermediate conveyances, was in possession of the premises at the time Holly, who was the father of plaintiff, and from whom she claimed title as his only heir, went into possession. It does not appear that Holly had any title, or claim of title, and no account is given of the manner in which he acquired possession. In such case, the possession is referred to the title, and the presumption is, that he held in recognition of, and in subserviency to the true title.—*Dothard v. Denson*, 72 Ala. 541.

Urquhart went into posession in 1867, under a deed from Robert Baugh, to whom the widow of Holly (and the mother of the plaintiff) had conveyed the premises in 1864, or 1865, improving the lot, and claiming and holding possession, by himself and tenants, to the commencement of the suit. He was in possession under a claim, if not color of title. Taking and holding possession under this claim of right, Urquhart was not *a mere trespasser;* and the defendants, holding under him, may defeat the plaintiff's action by showing a paramount legal title in a stranger.—*Snedecor v. Freeman*, 71 Ala. 140.

There is no question of adverse possession, or estoppel, raised upon the facts stated in the record.

For the errors mentioned, the judgment in each case is reversed, and the cause remanded.