ALMON, Justice.
The Kings sought to enjoin the West-brooks from using a service drive which runs across the Kings’ property. The West-brooks claim an easement which gives them the right to use the driveway.
The circuit court denied the injunctive relief, holding that the Westbrooks had an express easement and an implied easement of necessity. We reverse.
The Kings and Westbrooks are next door neighbors in Glenbrook Estates in Birmingham. The Kings own Lot 14 and the West-brooks own Lot 15. Although both lots front on Valleybrook Road, a public road, neither has a separate driveway to Valley-brook Road. The service drive is both parties’ means of ingress and egress. The service drive crosses the Kings’ property and ends at the boundary of their lot and the Westbrooks’ lot. (See attached map.)
The dispute arose when the Westbrooks petitioned to have the city garbage truck use the service drive. The Kings opposed this use of the drive because the truck would cause damage to the thinly paved drive.
The topography of this area is irregular. It was described as mountainous or hilly terrain. The original owner and developer thought it unwise for some of the lots to have individual driveways entering Valley-brook Road.
A map or plat of this portion of Glen-brook Estates was filed in 1956. Actual development of the area began in 1960. In May, 1960, a map or plat was filed which shows that the service drive runs from the boundary line of Lots 5 and 6 to the boundary line of Lots 14 and 15. The map or plat contains an affidavit which states:
“We, the undersigned, A. C. Coulter, Jr., a civil engineer and surveyor and the Southern Investment Land Company, Inc., as owner of Lots 6, 7, 8, 9,10,11,12, 13 & 14, Block 3, of Second Sector of Glenbrook Estates, certify that this is a correct map or plat of an easement for a private service drive or driveway for access to said lots. The easement shown by above map is adopted by the said Southern Investment Land Company, Inc., as owner, and same shall be a covenant running with the land and shall be binding upon all future owners.”
In July, 1960, a Maintenance Agreement regarding the service drive was filed. It states that the service drive is for the benefit of the owners of Lots 6 through 14 and is a covenant running with the land. The agreement requires the owners of Lots 6 through 14 to maintain the drive in a reasonable condition. The Westbrooks have refused to contribute anything for the upkeep of the drive.
Two issues are presented for review: (1) whether the evidence supports the court’s finding that the Westbrooks have an implied easement of necessity; and (2) whether the instruments creating the service drive are ambiguous, thereby allowing parol evidence to be admitted to show that *729 through a drafting error Lot 15 was not expressly included.
An easement of necessity cannot be created over the land of another when one can get to his property over his own land. The evidence in this case is uncontradicted and it is manifestly clear that no necessity exists. Bazzell v. Cain, 285 Ala. 661, 235 So.2d 805 (1970). The court erred in ruling the Westbrooks had an implied easement of necessity.
The court also ruled the Westbrooks had an easement by express grant. This conclusion is based on affidavits by James T. Sutliff, President of Southern Investment, and Joseph Miller, Jr., the draftsman of the service drive map and maintenance agreements, which state that it was only through a drafting error that the map and maintenance agreement do not include Lot 15.
It has been the law of this State for quite some time that an instrument may not be reformed for a unilateral mistake absent fraud. Mutuality of mistake is required. Darden v. Meadows, 259 Ala. 676, 68 So.2d 709. While reformation was neither sought nor granted in this case, the principle is the same. The instruments in question are clear and unequivocal. They apply only to Lots 6 through 14. The owner of Lot 15 acquired no interest by these instruments in the service driveway. Under these circumstances the affidavits of Sutliff and Miller were inadmissible. The instruments being unambiguous and there being no showing of mutuality of mistake, parol evidence is inadmissible to vary the terms of the instruments. Foster v. Carlisle, 159 Ala. 621, 48 So. 665 (1909); Donehoo v. Johnson, 120 Ala. 438, 24 So. 888 (1898); Guilmartin v. Ward, 76 Ala. 204 (1884).
For the reasons set forth, the judgment must be reversed and the cause remanded.
REVERSED AND REMANDED.
TORBERT, C. J., and BLOODWORTH, FAULKNER and EMBRY, JJ., concur.
EXHIBIT “C” to follow.
*730 [[Image here]]