[Gage & Co. v. Mobile & Ohio R. R. Co.]

# Gage & Co. *v.* Mobile & Ohio R. R. Co.

*Bill in Equity to enjoin the Closing up of an Alley.*

1. *Dedication of alley to public use: how proved.*—The dedication of an alley to public use in a city or town, by the owner of the property, will not be declared by the courts, unless his intention to make it unequivocally appears by clear and satisfactory evidence; nor will it be presumed from mere *user* by the public, however long continued, when such *user* was by consent of the owner, or was entirely consistent with his private rights and interests.

2. *Acceptance of alley by public authorities.*—The acceptance of an alley by the municipal authorities, as dedicated by the owner, must also be proved; and it is not established by the evidence in this case, under the rules laid down in *Steele v. Sullivan*, 70 Ala. 589.

APPEAL from Mobile Chancery Court.

Heard before Hon. THOMAS W. COLEMAN.

The bill was filed by appellants, Gage & Co., a partnership, to enjoin the Mobile & Ohio Railroad Company from closing up a space of ground, used theretofore as an alley, or passage way, between plaintiff's ice house on the one side and another building on the other side, on the ground that it was a public alley from Commerce street in Mobile to the Mobile river. The public character of the alley was sought to be shown by dedication and by prescription. The railroad company, claiming the said alley way as its own property, under title coming from one C. P. Gage, now deceased, but formerly a partner of complainants, set up that said alley was not and never had been public property, and that any public use thereof had been by permission of and for the benefit of the owner of the property through which the alley ran. The facts sufficiently appear in the opinion.

WM. S. ANDERSON, for appellants, cited Washburn on Easements, 199–221; 22 Pick. 75; Godd. on Easements, 181, 269–271; 2 Mass. 203; 8 *Ib.* 417; 2 Pick. 573; 66 Ala. 95; 22 Vt. 483; 14 Cal. 147; 27 Iowa, 15; 28 Ill. 492; 29 Conn. 172; 57 Ill. 369; 2 Mel. (Ky.) 104; 3 Bing. 447; 35 Barb. 395, 406; *Steele v. Sullivan*, 70 Ala. 593.

T. A. HAMILTON, *contra*, cited *Steele v. Sullivan*, 70 Ala. 589; 14 Cal. 650; Bouv. Law. Dic. 667, Tit. Highways;

[Gage & Co. v. Mobile & Ohio R. R. Co.]

Angell on Highways, §§ 2, 147, 153; 4 N. H. 383, 23 *Ib.* 337; 66 Ala. 95; 9 How. 30–31, 22 Ala. 197; 6 N. Y. 257; 13 Vt. 424; 2 Wait's Act. & Def. 717–718; 9 Pick. 251; 72 Ala. 388; 32 Ala. 76; 37 Conn. 136; 5 Watts & S. 141; Godd. on Easements, 133; Washburn on *Ib.* 87, 88, 200; 42 Am. Rep. 615; 4 Pick. 221; 5 Barn. & Ald. 232; 2 Smith's Lead. Cases, 563; 22 Vt. 483.

P. J. HAMILTON, *contra.*—1. Acts relied on as proving dedication must be unequivocal in their nature. 2. An acceptance by the public is necessary to make the dedication irrevocable. 3. Abandonment by the public revives the grantor's right to possession. 4. To claim title by prescription, the public *user* must be adverse to the owner, continuous under claim of right, and not permissive by owner. Authorities cited in brief of T. A. Hamilton.

SOMERVILLE, J.—The facts of this case, in our opinion, bring it fully within the principles settled in *Steele v, Sullivan,* 70 Ala. 589, and we might well affirm the decree of the chancellor on the authority of that case. The testimony set out in the record fails to satisfactorily show either a dedication of the alley in controversy by the owner, or its acceptance by the municipal authorities of the city of Mobile. A dedication of property to public uses will not be established by the courts unless the intention of the owner to make such dedication unequivocally appears by clear and satisfactory evidence.—*Forney v. Calhoun County,* 84 Ala. 215. And, however long the user of property may be continued, if it appears to be referable as well to an implied license of the owner as to any assertion of adverse claim by the public, the courts will attribute it to the former and not to the latter source of origin.

The main reliance of the appellants to sustain the alleged dedication in this case are: (1) Certain oral declarations attributed to Charles P. Gage, who had been the owner of the property for over thirty years; and (2) a supposed adverse user by the public for over twenty years. The acceptance of the city is sought to be shown by certain maps made under the authority of the municipal officers, and by the erection of a gas light on Commerce street near the entrance of the open space or alley.

To a proper understanding of the case it is important to keep in mind that, during the period of Gage's alleged de-

15

clarations, which in some cases are ambiguous in meaning, he was a half owner of the ice house property, belonging to C. P. Gage & Co., situated immediately north of the alley, and on the east side of Commerce street. He also owned the mill property on the south side of the supposed alley, and the wharf at the east end of the alley, and had an interest, for a time at least, in two steamers plying between Mobile and New Orleans, and landing at this wharf. The alley is shown to have been used by all who chose to pass through it going to and from the wharf, and afforded access also to the mill and ice house business. It is thus made probable, if not comparatively clear, that the alley was used by the public for the convenience of, and by the implied permission of Gage himself, in connection with the ice, mill and wharf business, and for the advancement of his own pecuniary interests. No inference can be drawn, therefore, that such user was under any adverse claim in favor of the public, however long continued. "It is an important circumstance," says Mr. Washburn, "in determining whether the user of the right claimed is adverse or not, that it is contrary to the interest of the owner of the land."—Washburn on Easements, *87. It has often been said that an enjoyment with the consent, or consistently with the rights and interests of the true owner has no tendency to prove a conveyance from him, or to establish an adverse right.—*Arnold v. Stevens*, 24 Pick. 106; *Steele v. Sullivan*, 70 Ala. 589, *supra*. A license by a business man to enter his premises, extended to the public to attract custom, and as an auxiliary to the promotion of such business, can not be construed to be a dedication however long continued. It is, therefore, revocable at his option.

The deeds to the property adjoining and including the alleged alley repel the presumption of a dedication. In all the conveyances of this and adjacent property, running back from the commencement of this suit, in the year 1886, for over sixty years, there is nothing to indicate the recognition or existence of an alley any where in the entire square, within the compass of which the property in controversy is embraced. These deeds being of a solemn and deliberate character, and placed upon the public records, must be taken as so many affirmative declarations by the owners of the alley property in denial of the public right. This is emphasized by a deed made by Charles P. Gage, in 1885, in which he quit-claims to his partners in the ice house business an undivided half interest in thirty feet of ground just north of

[Gage & Co. v. Mobile & Ohio R. R. Co.]

the alleged alley, and, in describing the boundaries of this lot, he not only fails to mention the alley on the south side, but describes the land on the south side, which includes the alley, *as his, the grantor's property*. As evidencing a further denial of the public right, it is stated by one witness in the record, and not satisfactorily refuted, that for one or two years after the war the open space in dispute was closed by a fence and gate on Commerce street, without apparent objection by the city authorities, or the public, the enclosure being used as a private coal yard during this interval. As said in *Steele v. Sullivan*, 70 Ala. 594, *supra*, "where the recorded deeds of the lands or lots, adjacent to a street or alley, contain recitals or words of conveyance which repel the idea of a dedication, this is always a very strong fact to rebut the presumption arising from the use of the public." And again it is said in the same case: "So, the creation of a gate, or other obstruction, across the entrance, rebuts the intention to dedicate an alley as a public highway."

There are other minor facts in the record, but taking all the testimony together it falls very far short of proving a clear and unequivocal intention on the part of the owner of the soil to dedicate the supposed alley in controversy to the public use.

The evidence of an acceptance by the public also is not satisfactorily proved. The maps of the city, which commence with the year 1837 and come down to 1887, some half dozen in number, seem to us rather to repel the idea of a recognition by the city authorities of the existence of a public alley at the place of the irregular opening in controversy. But one of these maps, prepared in 1868, seems clearly consistent with its existence. The others are repugnant to it. The erection of the gas-light post near the entrance unexplained is a circumstance of but little weight— no more in fact than the erection of a like one in front of a church or a private banking house. The testimony in the case does not clearly show any act on the part of the city from which we can infer unequivocally an acceptance of the supposed dedication.

It is obvious, in view of what we have said, that there is no room in this case for any operation of the doctrine of prescription. The occupation by *user* being permissive and not adverse, the lapse of time did not prejudice the title of the complainant.

These considerations vastly outweigh the alleged declara-

[Williams v. Gibson.]

tions of Gage that he intended the alley for public use. The testimony bearing on this point is not, in itself, free from ambiguity, and is quite as consistent with the idea that he intended the public to use the alley in connection with the wharf, mill and ice buisness, as with a purpose to abandon its use exclusively to the public. The whole proof in the case supports the counter declarations of Gage that his design was to leave the passage way in question open only for the promotion of his own private enterprises, whether conducted by himself, or his tenants.

The bill is not framed with the view of claiming a private way of necessity in favor of complainants, which would entitle them to free access to and from their stable adjoining the alley way. Nor is the right to such a way sustained by the testimony, based, as it here is, on convenience rather than necessity. A dedication proper can be made only to public and not to private uses.

The objections to testimony are not considered, as the result would be unaffected by them.

In our judgment, the decree of the chancellor dismissing the bill, is free from error, and must be affirmed.